<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____   )
                                   )
                                   )
KINNEY BUILDING ASSOCIATES,        )
L.L.C.,                            )        Civil Action No. 2:15-cv-7917-SDW-LDW
                   Plaintiff,      )
                                   )
v.                                 )
                                   )        **OPINION**
7-ELEVEN, INC.; JOHN DOES 1-10;    )
AND ABC COMPANIES 1-10,            )
                                   )
                   Defendants.     )        May 16, 2016
                                   )
_____   )

**WIGENTON**, District Judge.

Before this Court is Defendant 7-Eleven, Inc.'s ("Defendant" or "Tenant") Motion to Dismiss Counts I, II, IV, V, and VI of Plaintiff Kinney Building Associates, L.L.C.'s ("Plaintiff" or "Landlord") Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

### I.   JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## II.    FACTUAL HISTORY

Plaintiff, a limited liability corporation, owns a commercial building in Newark, New Jersey.  (Am. Compl. ¶ 1.)  On or about July 24, 2014, Plaintiff and Defendant entered a lease by which Plaintiff would rent a portion of the commercial building (the "Premises") to Defendant for operation of Defendant's 7-Eleven convenience store.[1]  (*Id*. ¶¶ 2, 6; *see* Yu Decl. Ex. A (the "Lease").)  On approximately March 20, 2015, Defendant provided written notice that it had taken possession of the Premises and that any conditions precedent under the lease, including Plaintiff's obligation to "remove or remediate . . . any and all asbestos-containing materials ("ACM") . . . [,]" were satisfied or waived.  (*Id*. ¶¶ 9-10.)  Approximately ten days later, on March 30, 2015, Defendant's employee and/or agent notified Plaintiff via e-mail that, while core drilling through the floor of the Premises so that waste lines could be run to the building's basement, he had "run[] into some asbestos wrapped ductwork . . . ."[2]  (*Id*. ¶ 15.)

According to Plaintiff, Defendant was aware "that ACM was present in areas of the [b]uilding immediately adjacent to the Premises . . . . [and] was[,] or should have been[,] aware of the layout of the area of the basement into which it [core drilled]."  (*Id*. ¶¶ 19-21.)  Nonetheless, Plaintiff claims, Defendant core drilled through the sixteen-inch floor slab of the Premises and into the basement without taking proper precautions (such as "mapping out the basement ceiling . . . or drilling from the basement into the Premises") to avoid disturbing "the previously-undisturbed ACM in the basement."  (*Id*. ¶¶ 22-29.)  As a result, Defendant caused the release of ACM "in the area of the [b]uilding's basement beneath the Premises . . . which required [Plaintiff to undertake]

---

[1] Defendant opened and began operating its convenience store in the Premises on August 17, 2015.  (Am. Compl. ¶ 14.)

[2] Core drilling is a method of drilling that removes a cylinder of material so that, for example, a drain line may be run through the cylindrical cut-out in a building's floor.

extensive and comprehensive ACM removal . . . ." (*Id.* ¶ 32.)  Specifically, Plaintiff claims to have spent $169,785.00 to remediate the ACM Defendant disturbed.  (*Id.* ¶ 43.)

Although Plaintiff requested that Defendant reimburse Plaintiff for the costs of remediating the disturbed ACM, Defendant refused.  (*Id.* ¶¶ 42-51.)  Accordingly, Plaintiff claims that Defendant is liable for violating several provisions of the Lease.  For example, Plaintiff claims that an addendum to the Lease, the Tenant Improvement Plan, only allowed Plaintiff to dig ditches which did not penetrate the floor of the Premises, but did not allow Plaintiff to core drill.  (*Id.* ¶ 22.)  In addition, Plaintiff claims that Defendant's failure to take proper precautions before core drilling, and the resulting release of ACM in the building, violated provisions of the Lease requiring Plaintiff to perform any alterations "in a good workmanlike manner without cost to Landlord."  (*Id.* ¶¶ 38-39.)  Moreover, Plaintiff claims Defendant was required to reimburse Plaintiff for repairs needed as a result of Defendant's gross negligence.  (*Id.* ¶ 36.)  In that respect, Plaintiff claims it is entitled to damages caused by the Defendants core drilling and also for Plaintiff's failure to pay the costs of remediation as "additional rent" under the terms of the Lease. (*Id.* ¶ 51.)  Plaintiff also claims Defendant is liable under theories of negligence, gross negligence, waste, unjust enrichment, and promissory estoppel.  (*Id.* ¶¶ 55-91.)

## III.  PROCEDURAL HISTORY

Plaintiff filed its Amended Complaint in this matter on December 16, 2015, and included claims for breach of contract (Count I); waste (Count II); negligence (Count III); gross negligence (Count IV); unjust enrichment (Count V), and promissory estoppel (Count VI).  (Dkt. No. 6.)  On January 11, 2016, Defendant filed a Motion to Dismiss five out of six counts of the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule

of Civil Procedure 12(b)(6).[3]  (Dkt. No. 11.)  Plaintiff subsequently filed its Brief in Opposition on February 2, 2016, (Dkt. No. 12. ("Pl.'s Br. Opp.")), and Defendant filed its Reply on February 9, 2016.  (Dkt. No. 13.)

## IV.   LEGAL STANDARD

### A.   *Federal Rule of Civil Procedure 12(b)(6)*

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether the allegations

---

[3] Defendant's Motion does not challenge Plaintiff's claim for negligence in Count III.  (*See generally* Def.'s Mem. L. Supp. Mot. Dismiss. ("Def.'s Br. Supp.").)

in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## V.   DISCUSSION

### A.   *Count I- Breach of Contract*

In order to adequately state a claim for breach of contract, a Plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F.Supp.2d 552, 561 (D.N.J. 2002)). In Count I of the Amended Complaint, Plaintiff claims Defendant breached several provisions of the Lease by core drilling in the Premises, doing so without taking adequate precautions to avoid disturbing ACM (and subsequently releasing ACM), and by failing to reimburse Plaintiff for the costs of remediating the ACM once it was disturbed. (*See* Am. Compl. ¶¶ 55-72.) In its Motion to Dismiss, Defendant claims that its actions did not violate any of the Lease provisions. (*See* Def.'s Br. Supp. 7-11.) Therefore, the issue currently before this Court as to Count I is whether Plaintiff sufficiently pled the second element of its breach of contract claim, i.e., whether Defendant's actions breached any of the Lease provisions.

"Under New Jersey law, a commercial lease is governed by traditional contract principles, under which '[d]iscerning contractual intent is a question of fact unless the provisions of a contract are wholly unambiguous.'" *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 507 (3d Cir. 2005) (citations

and internal quotation marks omitted).  In light of this standard, Defendant claims that this Court must dismiss Plaintiff's breach of contract claim because the Lease's terms are unambiguous and Defendant's actions did not violate any of those terms.  (*See* Def.'s Br. Supp. 7-11; Def.'s Br. Reply 2-7.)  However, the relevant provisions of the Lease are not so clear as to allow this Court to dismiss Plaintiff's breach of contract claim on the current record in this matter.  For example, Plaintiff claims Defendant's failure to take proper precautions in core drilling through the floor of the Premises violated Article 9(a) of the Lease which states:

> 9.    ALTERATIONS.
>
>    (a)    After Tenant's Initial Build-Out (as defined below), Tenant shall not make any alterations involving structural, weight bearing changes, changes which affect any building systems, or changes to the storefront or other exterior changes (except that Tenant may make changes to its exterior signage and trade dress as set forth in Article 42 below) without securing Landlord's written consent, which consent shall not be unreasonably withheld, conditioned or delayed. After Tenant's Initial Build-Out, Tenant may make all other alterations or additions, including, without limitation, non-weight bearing alterations to the Premises as Tenant may desire, including alterations to non-weight bearing partitions, without obtaining Landlord's written consent. *Any alterations or additions made by Tenant will be made in compliance with all applicable laws, in a good workmanlike manner without cost to Landlord*, and shall be free and clear of mechanics' and materialmen's liens provided that if any such lien is filed, Tenant shall either bond or discharge the same within fifteen (15) days following notice of the recording of any such lien.

(Yu Decl. Ex. A ¶ 9(a) (emphasis added).)  According to Plaintiff, Defendant's core drilling violated the third sentence of this provision: "Any alterations or additions made by Tenant will be made in compliance with all applicable laws, in a good workmanlike manner without cost to Landlord . . . ."  (*Id.*)  Defendant argues, however, that the referenced sentence of Article 9(a) only applies to alterations made *after* the "initial build-out," and that Defendant core drilled *during* the initial build-out.  (Def.'s Br. Reply 5-6.)  In opposition, Plaintiff—also arguing that the terms of Article 9(a) are clear—claims that the third sentence of Article 9(a)

6

applies to "[a]ny alterations" Defendant made to the Premises, i.e., alterations made after *or during* the initial build-out.  (Pl.'s Br. Opp. 15.)

Despite the parties' contentions, the third sentence of Article 9(a) is not so clear as to allow this Court to determine, on the current record, whether the parties intended the sentence to apply to the period *during* the initial build-out.  Of course, this is not to say that the parties did or did not intend to limit the requirement of the third sentence to the period after the initial build-out.  Rather, the point is that Article 9(a), as is the case with several of the relevant provisions of the Lease, is not so unambiguous as to warrant dismissal of Plaintiff's breach of contract claim at this time.  Accordingly, this Court denies Defendant's Motion as to Count I.

### B. Count II- Waste

N.J. Stat. Ann. § 2A:65-3 provides a cause of action for "[w]aste by [a] tenant without special license."  In addition, Section 2 provides:

> No tenant in dower or curtesy or for life, years or any term, shall, during the term, make or suffer any waste, sale or destruction of any property belonging to the tenements demised, without special license in writing.

N.J. Stat. Ann. § 2A:65-2.  Although these provisions do not define "waste," the New Jersey Supreme Court has explained that "a tenant may not make *material* changes or alterations in a building to suit his taste or convenience and that any material change in the nature or character of the buildings is waste, even though the value of the property be enhanced thereby."  *Crewe Corp. v. Feiler*, 146 A.2d 458, 462 (N.J. 1958) (emphasis added).

In Count II of the Amended Complaint, Plaintiff alleges Defendant "committed waste and destruction of [P]laintiff's Premises and Building due to the material alteration of the Premises' floor / Building's basement ceiling, and the structures attendant thereto."  (Am. Compl. ¶ 76.) According to Plaintiff, Defendant materially altered Plaintiff's property by drilling several holes

through the floor of the Premises.  (*Id*.)  However, without more, the bare legal conclusion that Plaintiff's drilling was a *material* alteration, cannot support a claim for waste.  *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.")  Even after accepting the Amended Complaint's factual allegations as true and construing the Amended Complaint in the light most favorable to Plaintiff, it is unclear how drilling several holes through the Premises floor could have constituted a substantial material change.  *Cf Crewe Corp.*, 46 A.2d at 462 (finding a substantial material change where "[a] building designed for industrial purposes was revamped into an office building, a wholly incompatible structure.")  Moreover, Plaintiff's claim in its Opposition that "the[] drill holes *may* have affected the stability and structural support of the Premises' floor . . . ." is purely speculative.  (*See* Pl.'s Br. Opp. 3 (emphasis added).)  Accordingly, Plaintiff has failed to plead sufficient facts to support its claim for Waste.

### C.    *Count IV- Gross Negligence*

To sufficiently state a claim for negligence (which differs from gross negligence only in the degree of negligent conduct) a plaintiff must allege the defendant breached a duty of care and that the breach was the actual and proximate cause of damages to the plaintiff.  *See Zelnick v. Morristown-Beard Sch.*, No. L-1947-13, 2016 WL 1454491, at *5 (N.J. Super. Ct. Law Div. Apr. 13, 2016); *Parks v. Pep Boys*, 659 A.2d 471, 478 n.6 (N.J. Sup. Ct. App. Div. 1995).  In Count IV of the Amended Complaint, Plaintiff claims Defendant's failure to take adequate precautions when core drilling and the subsequent release of ACM constituted gross negligence.  (Am. Compl. ¶¶ 81-83.)  However, Count IV of the Complaint does not state that Defendant owed a duty of care or that Defendant's actions breached that duty.  (*Id*. ¶¶ 81-83.)  In contrast, Plaintiff's Opposition states, "[Defendant's] form Lease provides that [Defendant] is responsible under Article 8 of the

Lease for repairs arising out of its gross negligence.  [Plaintiff's] claim against [Defendant] for gross negligence arises out of this contractual provision."  (Pl.'s Br. Opp. 22.)  Yet, "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."  *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002).  As Plaintiff did not plead that Defendant owed any duty other than those imposed by the terms of the Lease itself, Plaintiff has failed to state a claim for gross negligence.

###        D.        *Count V (Unjust Enrichment) and Count VI (Promissory Estoppel)*

In Count V and Count VI of the Amended Complaint, Plaintiff alleges that Defendant is liable under theories of unjust enrichment and promissory estoppel, respectively.  (Am. Compl. ¶¶ 84-91.)  However, quasi-contract claims, such as unjust enrichment and promissory estoppel, "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations."  *Jones v. Marin*, No. CIV. 07-0738, 2009 WL 2595619, at *6 (D.N.J. Aug. 20, 2009) (first citing *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Assoc.*, No. 04–4540, 2005 WL 1199045, *7 (D.N.J. May 18, 2005); then citing *Winslow v. Corporate Express, Inc.*, 834 A.2d 1037 (N.J. Super. Ct. App. Div. 2003)); *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (holding that "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties"); *Moser v. Milner Hotels*, 78 A.2d 393, 394 (N.J. 1951) ("When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the law implies, in the absence of that agreement which they made for themselves." (internal quotation marks omitted) (quoting *Voorhees v. Executors of Woodhull*, 33 N.J.L. 494, 496-497 (E. & A. 1869); then citing *Osterling v. Cape May Hotel Co.*, 82 N.J.L. 650, 653, 83 A. 887 (E. & A. 1912); and then citing *Pericin v. Denburg's Modern Bakery*, 130 N.J.L. 547, 553, 33 A.2d 825 (E. & A. 1943))).  As there is no dispute as to the existence or validity of

the contract governing the relationship of the parties in this matter, Plaintiff may not maintain its claims for unjust enrichment and promissory estoppel.

**VI.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  Specifically, the Motion is granted as to Counts II, IV, V, and VI.  The Motion is denied as to Count I.  An appropriate order follows.


*s/ Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**


Orig:        Clerk
cc:          Magistrate Judge Leda D. Wettre
             Parties